243 S.W.2d 326 (1951)
STATE
v.
HARMON.
No. 42262.
Supreme Court of Missouri, Division No. 1.
November 12, 1951.
*327 Jack C. Jones, Carrollton, for appellant.
J. E. Taylor, Atty. Gen., Samuel M. Watson, Asst. Atty. Gen., Grover C. Huston, Asst. Atty. Gen., for respondent.
LOZIER, Commissioner.
This case was reassigned. We use, without quotation marks, portions of the opinion initially prepared.
*328 Clarence R. Harmon was convicted of grand larceny and has appealed from a judgment sentencing him to two years in the penitentiary.
The state's motion to strike all of the transcript of the record other than the record proper was submitted with the case. After verdict, prior to judgment, and within time, defendant filed his motion for new trial. The bill of exceptions recites that the motion for new trial was called, submitted for determination and, after consideration, overruled. A stipulation was executed wherein counsel for both parties agreed that the bill of exceptions to which it was attached was true and correct and that the same might be approved, allowed, and signed by the trial judge. The trial judge, by his executed certificate, signed and allowed it as a true and correct bill, except as to the entry heretofore referred to pertaining to the court's action on defendant's motion for new trial. A statement of the trial judge, attached to his certificate, is as follows: "I, James S. Rooney, Judge of the Circuit Court of Carroll County, Missouri, state that I will not approve the stipulation as set forth on page 387 herein, for the reason that the within and foregoing bill of exceptions is not entirely correct. I will certify that it is correct in all respects excepting only the entry shown on page 382 hereof relating to the overruling of defendant's motion for a new trial. I have examined the original and permanent entry made on my docket on July 7, 1950 and find the following: `July 7, 1950. On request of defendant his motion for new trial is refused. Punishment is assessed at imprisonment in the Missouri State Penitentiary for a period of two years. Allocution, judgment and sentence accordingly.' This request was made by the attorney for the defendant, and this is the fact concerning the action taken on defendant's motion for new trial. This permanent entry was made by me at that time and the word `defendant' was underlined on my docket at that time, so that there could be no question concerning it later."
A certified copy of the docket entry contained in the court's statement above was furnished to correct the record proper.
It appears, therefore, that the full transcript, as corrected, has been duly settled and properly filed. No reason has been assigned for ordering, nor do we know of any basis upon which we could order, any part of the transcript stricken. The state's motion to strike is overruled. The real contention of the state, presented by its motion and the supporting memorandum, is that defendant by requesting the trial court to "refuse" his motion for new trial has waived his right to, or is estopped to, urge on this appeal any alleged errors committed in the trial of the case and preserved in his motion for new trial for review. These contentions, while not supporting a motion to strike, will be considered and determined although not presented as they should be as a part of state's brief on the merits.
A defendant in a criminal case may expressly or by acts and conduct waive statutory and constitutional provisions conferred for his protection. Illustrative of the principle are cases holding that a defendant may waive his right to appeal; his right to be confronted with adverse witnesses; his right to disqualify a judge or to obtain a change of venue. He may stipulate for a change of venue and thereby waive the necessity for a written application and affidavit therefor. He may waive the necessity for signatures of witnesses to their testimony at a preliminary hearing. 17 C.J. 48, § 3326 (24 C.J.S., Criminal Law, § 1668); State v. Perkins, 339 Mo. 27, 31, 95 S.W.2d 75, 76, 77; State v. Logan, 344 Mo. 351, 354, 355, 126 S.W.2d 256, 259, 122 A.L.R. 417; State v. Naves, 185 Mo. 125, 133, 84 S.W. 1, 3; State v. Taylor, 132 Mo. 282, 287, 33 S.W. 1145, 1146, 1147; State v. Lloyd, 337 Mo. 990, 993, 87 S.W.2d 418, 420. And, of course, a defendant may not take advantage of self-invited error. State v. Woodward, 182 Mo. 391, 414, 81 S.W. 857, 864; State v. Nenninger, 354 Mo. 53, 59, 188 S.W.2d 56, 58.
*329 Here, whether it be contended that appellant waived his right to appeal, or waived his right on appeal to urge any alleged errors occurring during trial, or is estopped to assert such alleged errors on the theory that they were self-invited, the answer must depend upon the interpretation which may be placed upon the entry made by the trial judge in the light of the acts of the parties concerned and other existing circumstances.
We are convinced that an appellate court should not hold that a defendant in a criminal case has waived a right or find that he is estopped unless the record, the acts of defendant and all the circumstances are inconsistent with any other interpretation. The docket entry of July 7, 1950 is: "On request of defendant his motion for new trial is refused." We shall assume that the word "refused" means "overruled." We note certain other record entries which are not consistent with the conclusion that appellant intended to waive his right to urge alleged errors occurring during the trial on appeal or to waive his right of appeal but, on the contrary, indicate an opposite intention.
As stated, the record shows the entry by the trial court was made on July 7, 1950. The record also shows that appellant on the same date was granted allocution and sentenced in accordance with the verdict of the jury; on the same day appellant's notice of appeal was filed; on the same day the court fixed the amount of an appeal bond at $4,000; on July 12, 1950 appellant's recognizance on appeal was filed and approved by the trial court.
The act of defendant, through his attorneys, following a "request" that the motion for new trial be "refused" and after judgment had been pronounced, in filing a notice of appeal on the same day the motion was "refused," the action of the court at the same time in fixing the amount of the appeal bond of the defendant and thereafter approving the bond, are inconsistent with an understanding among the court, the appellant, and counsel for both sides that appellant, by his request, was waiving or intended to waive either his right to appeal or his right to urge alleged error on appeal. Further, prior to the time the bill of exceptions was submitted to the trial judge for approval, attorneys for the state and appellant agreed by written stipulation that the bill of exceptions was true and correct. The bill of exceptions so agreed upon contained the following under date of July 7, 1950: "Now comes the Prosecuting Attorney for the State and the Defendant in person, and by his attorneys, and the motion of the defendant for a new trial of this cause is here called up and submitted to the Court for determination; and the Court, having heard and duly considered said motion, doth order that the same be overruled." We make clear that we do not refer to this entry in the bill of exceptions as in any way indicating that the docket entry made by the trial judge is not accurately reflected in the trial judge's statement heretofore set forth and appearing in the record proper as corrected after filing here. We make this reference only as indicative of the fact that counsel for the state and appellant did not understand that whatever proceedings occurred before the trial judge on July 7, 1950 resulted in, or that the result was intended to be, an intentional waiver of any right relating to appeal on the part of appellant.
It is also proper, we think, in considering this question to point out that if appellant, through his attorneys, did make clear to the trial judge that appellant desired to waive any rights he might have to appeal or to urge alleged errors occurring during trial on appeal, then such intention could have been unmistakably reflected in the record by the withdrawal by appellant of his motion for new trial. In Commonwealth of Pennsylvania v. Bailey & Ford, 92 Pa.Super. 581, the record showed that defendants agreed to a withdrawal of their motion in arrest of judgment and agreed to accept without further exception or objection sentences imposing imprisonment, and that this agreement was entered into by the defendants after the advice of counsel and with a full understanding of the implications of the agreement. The court held that the defendants had waived any right on appeal to urge *330 any error occurring prior to sentence. The court said at page 585 of 92 Pa.Super. "In our view any other conclusion would amount to permitting the appellant to defeat the ends of justice by a trick played upon the district attorney and the trial court. While an appellate court will be slow to find a waiver of the right of appeal as a matter of inference, it should do so without hesitation where the intention to waive it is as clear as it is here." We also should have no hesitation in holding that a defendant waives his right to appeal or to urge alleged error on appeal where the intention to so waive clearly appears from the record.
We are unable in this case, however, to find that the record, in the light of the acts of the parties and the existing circumstances, clearly shows that appellant did or intended to waive his right to appeal or his right to urge on appeal alleged errors which occurred during the trial of this case. We hold, therefore, that appellant has not waived his right to urge alleged errors occurring during the trial on this appeal.
Appellant attacks the sufficiency of the evidence to sustain a conviction. Appellant was charged by information, as amended, with the larceny of an Angus cow of a value in excess of $30 belonging to A. H. Schmidt and Harold Schmidt. The state adduced evidence to the effect that A. H. Schmidt and his son, Harold Schmidt, operated a stock farm in Clay County, Missouri, specializing in registered Aberdeen Angus cattle; that on November 1, 1948 there was, in the west Randolph pasture, a herd of heifers, among which was one registered as "Tarkio's Blackbird 446," register number 932391, 2½ years old and weighing 900 lbs., the reasonable value of which was $1,000; that the cow in question was marked with tattoo marks "AHS" in the left ear, the herd number in the right ear, certain other ear tags, and bore a chain around its neck to which was suspended a metal tag containing the number G-23; that the cow belonged to A. H. and Harold Schmidt, and was not by them intentionally disposed of by sale, gift, or otherwise; that the cow may have been missing on November 16 or 17, 1948; that it was surely missing on the 2nd or 3rd of January, 1949.
The state's evidence further showed that on November 11, 1948, appellant was living in a house, located on land adjoining the west Randolph pasture, with one Emma Jean Moore; that on that date appellant left the house a little after dark with a.22 rifle in his possession; that he returned between 11 and 11:30 p. m. and threw the hind leg of a cow, with the hoof and hair on it, onto the floor of one of the rooms; that he pointed the rifle at Emma Jean Moore, addressed some abusive language to her, and told her that she was to help him carry the remainder of a cow, threatened to kill her if she didn't, and stated that she "was just as much into it as he was"; that appellant and Emma Jean obtained an iron pole, went by automobile a distance of about ¼ mile, climbed a fence and went into the Schmidt pasture a distance of another ¼ mile where there was a cow with the hide still on and partially cut up; that appellant threw the head of the cow in a ditch; that appellant and Emma Jean Moore carried the pieces of the cow to the automobile, returned to the garage on the premises occupied by appellant where he placed the pieces of the cow on a tent spread over the top of an old pool table, and there skinned it and cut it up into small pieces; that appellant threw the hide in the Missouri River which was about ¼ mile away and told Emma Jean Moore that he was selling some of the meat to a John Hash who operated a cafe in the vicinity and was giving or had given some to his sister; and further said that he had told Hash that he (appellant) got the the meat in Iowa; that appellant did sell Hash 196 lbs. of beef which was in a chopped condition after he had, some days prior thereto, inquired of Hash if he would buy such meat which appellant represented he would obtain in Iowa; that appellant owned no cattle of any kind and was not at the time employed.
On January 2 or 3, 1949, Emma Jean Moore, one Steve Pratt, who owned the house occupied by appellant on November 11, a deputy sheriff, and the manager of *331 the Schmidt farm went to the place in the Schmidt pasture where Emma Jean said she and appellant had picked up the pieces of cow on November 11, 1948. The head, or the lower jaws of the head, of a cow was found in the ditch. There were no ears on the head; some hogs had been running in the pasture during the time between November and January. The ears were not found, nor were any identification tags or identification chain found, although a search therefor was made. The same parties left the pasture and went to the garage on the premises formerly occupied by appellant and found a tent which bore marks of blood upon it.
It is not necessary to review evidence to the contrary or evidence which tends to weaken or affect the weight of the state's proof. We should state, however, that appellant testified at the trial, denied killing any heifer at any time or at any place, denied selling any meat at any time to Hash, and denied in detail the testimony of Emma Jean Moore as to the occurrences of the night of November 11, 1948. In other words, appellant did not claim that the cow he carried from the pasture was his or that he had obtained the beef in Iowa but, as noted, denied the entire transaction.
In determining the sufficiency of evidence, we consider as true the evidence favorable to the state and the favorable inferences reasonably to be drawn therefrom. Evidence to the contrary is rejected. State v. Swindell, 357 Mo. 1090, 1094, 212 S.W.2d 415, 417.
When the evidence here is so considered, it does constitute substantial evidence from which the jury could reasonably find appellant guilty of the crime charged. It is true that the cut up cow carried from the Schmidt pasture by appellant and the witness Moore was not positively identified as "Tarkio's Blackbird 446." The recited evidence, however, was such that the jury could reasonably infer that the cow carried away on the night in question was "Tarkio's Blackbird 446," the property of the Schmidts.
Appellant points to some conflicts in the testimony of state's witnesses and to some facts and circumstances developed which could have affected the credibility of the witness Moore. These conflicts in testimony and the facts and circumstances affecting the credibility of the witnesses were for the consideration of the jury in the performance of its function to weigh the evidence. Obviously, the state's evidence was not as contended by appellant, so "indefinite, uncertain, and so conflicting" as to destroy its value, or as not to amount to substantial evidence.
Appellant further contends, as we understand it, that evidence offered by appellant in support of his insanity defense conclusively established that the appellant was insane on November 11, 1948. Suffice to say that appellant produced in evidence the records of the United States Veterans' Administration, which were rather convincing as to the fact of some mental incapacity and from which the jury could have inferred that appellant was insane at the time of the alleged crime, and did not have mental capacity to distinguish between the right and wrong of his act. The state adduced in evidence the opinion of a doctor, who had examined appellant the latter part of 1948 or the early part of 1949, that appellant was able to comprehend the difference between right and wrong at the time of the examination. Whether appellant was insane at the time of the alleged crime was a question of fact for the jury; it was for them to weigh the evidence and find whether appellant did have mental capacity on the date in question to distinguish between the right and wrong of his act. State v. Tarwater, 293 Mo. 273, 293, 239 S.W. 480, 486.
Appellant's assignment of error No. 1 in his motion for new trial attacks the information as "insufficient, ambiguous, indefinite, uncertain, misleading, confusing, and not sufficiently clear, definite, and certain to state a cause of action against this defendant, and is not sustained by the evidence." Nowhere, either in the motion for new trial or in the brief filed herein, does appellant explain wherein the information is defective. We examine the information as a part of the record proper. It is in proper form. It charges appellant with *332 the crime of grand larceny substantially in the language of § 560.155, Mo.R.S.1949.
Appellant's assignments of error 4 and 5 in his motion for new trial are, respectively: "Because the Court erred in giving each and every instruction offered by the State and given by the Court" and "Because the Court erred in refusing each and every instruction offered by the defendant and refused by the Court." These assignments of error preserve nothing for appellate review. State v. Baker, 355 Mo. 1048, 1050, 199 S.W.2d 393, 394; State v. Plassard, 355 Mo. 90, 195 S.W.2d 495, 497. Appellant in his brief has failed to point out wherein any of the instructions are claimed to be erroneous.
We have examined the entire record and find no reversible error.
The judgment is affirmed.
PER CURIAM.
The foregoing opinion by LOZIER, C., is adopted as the opinion of the court.
All concur.
VAN OSDOL, C., concurs.
COIL, C., dissents.