# THE STATE v. ROSE, Appellant.

## Division Two, November 17, 1903.

1. **Instruction:** FAILURE TO DESIGNATE MINIMUM PUNISHMENT. Where the statute states that defendant's punishment may be "by imprisonment in the county jail not to exceed three months," an instruction which uses those words is not error because it fails to designate the minimum punishment which may be assessed.

2. ————: STOLEN GOODS: POSSESSION. An instruction which requires all the goods described in the information to have been found in the possession of the defendant, is not erroneous if only some of them were found in his possession. The omission of the words "or any part thereof," if an error at all, is one operating against the State, and not against the defendant.

3. ————: ————: TAKEN BY CONSENT. Where the instruction given for the State required the jury to find that the defendant intended to deprive the owner of his property and took it without his consent it is not error to refuse a like instruction asked by defendant.

4. **Passion and Prejudice:** INCOMPETENT EVIDENCE: EXCESSIVE PUNISHMENT. The prosecuting attorney, in a prosecution charging defendant with having stolen from a companion less than three dollars' worth of goods, in the nighttime, called a justice of the peace who had been such for four years, and said, "Turn to your docket, State of Missouri vs. John Rose, for larceny," and stated to the court that he wished "to show the record." The court sustained an objection to the justice's making any statement before the jury, but said nothing to destroy the injurious effect of the statement of the prosecuting attorney which announced that that record showed that defendant had been charged with larceny. The defendant did not testify in his own behalf. *Held*, that in view of the fact that defendant's punishment was fixed at two years' imprisonment when it might have been fixed at one day in the county jail, and in view of the circumstances surrounding the case, the verdict indicates that the jury's passions may have been inflamed by the improper remark, and the judgment must be reversed and the cause remanded.

Appeal from Johnson Circuit Court.—*Hon. Wm. L. Jarrott*, Judge.

REVERSED AND REMANDED.

*R. M. Robertson* for appellant.

(1) Instruction 1 on the part of the State was not right or fair to defendant. If told how small a penitentiary sentence could be given, why not tell how small a jail sentence could be given? Juries sometimes have "expense to county" in mind, and if they had been told they could give one day in the county jail, they might have so found. R. S. 1899, sec. 1901. (2) Instruction 2, on the part of the State, was wrong; there was no evidence that all the property described in the information was found in defendant's possession; there was no evidence that defendant had one cent of Estes's money in his possession. (3) Instructions numbered 5 and 6, asked by defendant, ought not to have been refused. When the owner consents, there is no larceny; and all the evidence and circumstances surrounding this case go to show that Estes was consenting to defendant's getting the twenty cents on the knife and pocketbook. He waited in the background till defendant got the twenty cents of Palmer, and then helped him drink it up. State v. Lambert, 21 Mo. App. 301; State v. Campbell, 108 Mo. 611. (4) The placing of Justice Brown on the witness stand, with his docket in hand, and the questions put to him and the statements then made by the prosecuting attorney, after the defense had closed, without defendant's testifying in the case, was wrong and contrary to all law. State v. Fischer, 124 Mo. 460; State v. Prendible, 165 Mo. 329; State v. Moxley, 102 Mo. 374; State v. Martin, 74 Mo. 548. (5) But the unfair means of poisoning the minds of the jury against the defendant in the introduction of evidence, as above, did not satisfy the prosecuting attorney, and he continued along the same lines during his entire closing argument, and when defendant's attorney would object, he would deny the statement as made, and when asked to repeat what he did say, so that defendant might except, he would reply, "I don't have to." The court should have re-

buked him, but even though it had, the poison had been so skillfully administered that no antidote from the court could then have changed its effect. The laws of Missouri do not tolerate such proceedings. State v. Cring, 64 Mo. 591; State v. Lee, 66 Mo. 165; State v. Fergeson, 152 Mo. 92; State v. Ulrich, 110 Mo. 350; State v. Young, 99 Mo. 666; State v. Bobbet, 131 Mo. 328; State v. Warford, 106 Mo. 55; State v. Foley, 12 Mo. App. 431.

*Edward C. Crow,* Attorney-General, and *Sam B. Jeffries,* Assistant Attorney-General, for the State.

(1) Defendant was not prejudiced by the effort of the prosecuting attorney to introduce the record of the justice of the peace. There is nothing stated in the record showing that the defendant requested the court to rebuke the prosecuting attorney for offering to introduce the record of the justice of the peace, nor is there anything showing that the request was made to rebuke the prosecuting attorney when he stated that he wanted to show the record. The statement that the prosecuting attorney made was not that he wanted to show the defendant's previous record, but that he wanted to show the record of the justice of the peace. As to whether or not the record so offered reflected upon the character and conduct of the defendant, the testimony does not show, and as long as there is no showing in that respect, it certainly could not prejudice the interests of the defendant. The record was denied admission by the court and that is sufficient. The objection made by the defendant to the remarks of the prosecuting attorney are not sufficient to authorize the court to reverse the cause. This colloquy seems to have taken place during the trial. "Mr. Robertson: The prosecuting attorney says that he wants the jury not to turn a character of that kind loose on society." This is a reference to the argument of the prosecuting attorney, by counsel for defendant. The record shows that the prosecuting attorney denied

State v. Rose.

at the time making any such statement; then defendant's counsel requested Mr. Morrow to make his statement then. The prosecuting attorney then stated, ''I don't have to. I stated to the jury that a man who would steal from his partner in the nighttime, take money out of his pocket, ought to be in the penitentiary; that he ought not to be turned out with good men.'' The court overruled his statement. We submit that there is nothing in the statement of the prosecuting attorney that he was not justifiable in making. It was a proper argument to be used in addressing the jury. (2) The offense committed was indeed small so far as the value of the property is concerned, and while it may be considered excessive punishment to require defendant to be imprisoned for two years, yet technically the law has been violated and a clear case was made out.

FOX, J.—On the 10th day of February, 1903, the prosecuting attorney of Johnson county filed in the circuit court of said county an information charging the defendant with grand larceny, for stealing a knife, pair of gloves and a purse containing some money from the person of one Newton Estes, the offense being committed in the nighttime, and so charged in the information.

The information in this case is based upon the provisions of sections 1900 and 1901 of the Revised Statutes of 1899, which make the stealing of property from a person in the nighttime a felony punishable by imprisonment in the penitentiary not exceeding seven years, or by imprisonment in the county jail not exceeding three months, where the value of the property so stolen is less than thirty dollars; where the value of the property is thirty dollars or upwards, the punishment is fixed at imprisonment in the penitentiary not exceeding seven years.

The defendant was afterwards tried, and convicted, as charged in the information, and his punishment assessed at two years' imprisonment in the penitentiary.

The evidence in this case tends to show that the defendant and the prosecuting witness, Estes, were in a poolroom in the city of Warrensburg about nine o'clock of the evening of the third day of December, 1902; while there the prosecuting witness went to sleep, and the defendant went to him and took from his pocket a purse containing some money, a barlow knife and a pair of gloves; the barlow knife was worth about twenty-five cents and the purse about the same. Soon after the defendant took the knife, purse and gloves from the pocket of the prosecuting witness, he awoke Estes, and they left the poolroom and went to the lighthouse, which evidently was near the railroad track, though its location is not specified in the testimony. They remained there until five o'clock the next morning, when they went to the depot and then to the restaurant.

The prosecuting witness missed his purse and knife immediately after they had left the poolroom while he and the defendant were on their way to the lighthouse. The next morning he asked the defendant to give him his gloves. The defendant did so, and Estes then asked him for the knife and purse. Defendant denied having them. On the following day the prosecuting witness discovered the purse and knife in a secondhand store in Warrensburg. He told the proprietor, Mr. Palmer, that they belonged to him and asked Palmer who had sold them to him. Estes, on being told that Rose had brought them in and sold them to Palmer, immediately went in search for the defendant. The defendant admitted having sold them and told Estes that he would get them for him.

The evidence shows that both the defendant and the prosecuting witness had been drinking during the night of the offense.

Feeling himself aggrieved because of the verdict of the jury, the defendant prosecutes his appeal to this court. Being unable to give bond, he is now confined in the penitentiary.

Sam Renick, witness for State, testified in this cause substantially as follows:

"I live here in Warrensburg. I know the defendant, John Rose. I know Newton Estes. I saw John Rose and Estes in the billiard hall. I was in Warrensburg along about the first few days of December, about the third of the month, I think. I was in the restaurant sitting by the stove and Newt. was in there lying down flat of his back asleep; he was lying on the settee, right behind the stove, and Jerry was playing pool. When I say Jerry I mean John Rose, the defendant. He was teaching some trick with the pool balls. He came over and slapped Newt. on the head, but Newt. didn't wake up; then he went into his back pocket and took out his pocket-book and knife and some chewing tobacco. He told me he was going to give them back the next morning. He offered me a chew of tobacco, but I told him I didn't want it. That was in Warrensburg and Johnson county."

W. H. Palmer's testimony was in substance as follows:

"Live in Warrensburg and know Rose and Estes. Run secondhand store. On the third or fourth of December last Rose came to the store with a purse and knife and sold them to me. Was early in the morning. Some time after that Estes called and wanted to look at the pocketbook and asked where I got it, and I told him, and he says, 'It's mine,' and I showed him the knife and he said it was his.

"Cross-examination: I was out in front of the store soon after Estes left and Rose came up and said, 'Did Estes say anything to you about them things?' and I says he claimed them, and Rose says, "They are his, and you let him have 'em.' Rose had only got twenty cents on them. I think Rose and Estes are chums; have known them for a good while and they drink and carouse around together, and they frequently sell things and pawn things at my place, and both of them have done so

before this time. I remember they brought a vest in once. As soon as I called Rose's attention to the fact that Estes claimed the property in this case he said it was Newt's.. Newt. was around there at the time; I don't remember whether they were drinking or not—most likely they were—they always are."

The testimony on the part of the defense tended to show that the prosecuting witness, Estes, did not have money, and witnesses testify that he was trying to borrow money. Defendant did not offer himself as a witness.

The State offered in rebuttal, after the close of the evidence on the part of the defendant, John W. Brown, who testified as follows:

"Q. Your name is John W. Brown? A. Yes, sir.

"You are justice of the peace for Warrensburg township now, are you? A. Yes, sir.

"And have you been for more than four years? A. Yes, sir.

"Q. I wish you would turn to your docket, State of Missouri v. John Rose, for larceny.

"By Mr. Robertson: We object to his making statements of that kind before this jury. We object to the remark made by the prosecuting attorney.

"By the Court: Let me look at it. The objection will be sustained until I see what it is. What do you want to show?

"By Mr. Morrow: I want to show the record, if your honor please.

"By the Court: Objection sustained.

"By Mr. Morrow: That is our case."

The first contention of appellant is, that the failure of the court to designate by express terms in instruction numbered 1, the minimum punishment as to the imprisonment in the county jail, was unfair to defendant and constitutes error. That part of instruction 1, of which

complaint is made, after requiring, in usual form, the jury to find a certain state of facts, concludes as follows:

"Then you will find the defendant guilty as charged are told, in express terms, what is the maximum punishment at imprisonment in the penitentiary for a term of not less than two years, nor more than seven years, or by imprisonment in the county jail not exceeding three months."

It will be observed that in this instruction the jury are told, in express terms, what is the maximum punishment by imprisonment in the county jail, not to exceed three months in the county jail. This is the usual form of an instruction, intended to guide the jury in fixing the punishment, and we are of the opinion that it is not misleading, and it requires but very ordinary intelligence to understand from the use of the terms "or by imprisonment in the county jail not exceeding three months," that any length of time of imprisonment may be fixed, so that it does not exceed the time expressly designated.

There is no merit in this contention, and it must be ruled against the appellant.

It is next insisted that instruction numbered 2 as applicable to recent possession of stolen property, was erroneous, for the reason that all the property described in the information was not found in the possession of defendant. This instruction properly declared the law, except, giving it a technical construction, it required the jury to find that all the property described in the information was stolen from the person of Newton Estes, and was found in the exclusive possession of the defendant, when, in fact, only a part of the property was found in his possession. This could not have harmed the defendant, for if the jury had only been required to find that the property described in the information was stolen, and any part of it was found in his possession, this would have raised the presumption of his guilt, and

unless satisfactorily explained, authorized his conviction.

The omission from this instruction "or any part thereof," following the terms, "property described in the information," if an error at all, is one operating against the State instead of the defendant, for it required the jury to find more than was necessary, in respect to the possession of the property, in order to raise the presumption of guilt on the part of the defendant.

Instructions numbered 5 and 6, prayed for by appellant, and refused by the court, are as follows:

"5.   The court instructs the jury that if you should find and believe from the evidence, and from all the facts and circumstances surrounding this case, that Newton Estes, the prosecuting witness in this case, knew of or consented to the defendant disposing of the pocketbook and knife in question to Palmer, then and in that event defendant was not guilty of stealing said property.

"6.   The court further instructs the jury and declares the law to be that if you should find from the evidence in this case that the only property taken from Newton Estes by the defendant was taken in the presence of Samuel Renick, or any other person, and that the defendant after taking the same from Estes immediately slapped him and told him to 'come on and let's go,' then and in that event you should acquit the defendant."

We have carefully examined the testimony as disclosed by the record, and find no evidence upon which to predicate those instructions. It may be noted that the first instruction given on the part of the State fully covers the proposition sought by instruction numbered 5.   It requires the jury to find that he intended to deprive the owner of his property, without his consent. There was no error in the refusal of these instructions.

This brings us to the consideration of the last contention in this case.   It is insisted that the introduction of Justice Brown and the statements made by the prose-

cuting attorney, in connection with the offering this testimony in the presence of the jury, were calculated to prejudice the minds of the jury and thereby endanger a fair trial.

It is also urged that the improper statements in the presence of the jury were followed up by the prosecuting attorney in his argument to the jury, indirectly referring to the statements, and thereby unduly prejudicing the minds of the jury against the defendant.

This error complained of particularly attracts our attention, in view of the frank statement made in the brief by the Attorney-General, for the State, in respect to the punishment assessed by the verdict in this cause. He says:

"The offense committed was indeed small so far as the value of the property is concerned, and while it may be considered excessive punishment to require defendant to be imprisoned for two years, yet technically, the law has been violated."

This defendant was entitled to a fair and impartial trial; if guilty, such punishment should be administered to him as the nature of the offense warranted, and the evidence disclosed.

The lawmaking power, in fixing the punishment for the offense with which defendant is charged, gave a wide range, from a day's imprisonment in the county jail to seven years in the penitentiary. Doubtless this was done to meet the special features that might be developed in any given case.

The defendant in this cause, it is charged, is guilty of stealing a little over three dollars worth of property, and his punishment was assessed at two years' imprisonment in the penitentiary; and it is earnestly urged that the severe punishment was administered by reason of the unwarranted statements of the prosecuting attorney in the presence of the jury.

The defendant had not been introduced as a witness, yet we find 'Squire Brown called before the jury,

with his docket.   He was solemnly sworn, and counsel for the State, in a formal manner, established the fact that he was a justice of the peace, and had been for four years, in Warrensburg township.   The State's counsel then, in the presence of the jury, said to 'Squire Brown: "I wish you would turn to your docket, State of Missouri v. John Rose, for larceny."   Counsel for defendant objected to this statement before the jury.

Nothing was said to the State's counsel or to the jury to destroy any injurious effects of such a statement. Upon the inquiry by the court, as to what counsel for the State wanted to show, the counsel replied, "I want to show the record."   The record, of course, was excluded.

The first inquiry is, what was the purpose of introducing Brown and making this statement?   It certainly will not be pretended that, even if there was a record as indicated, it had anything to do with the case on trial.   The defendant had not testified.   Counsel for appellant insists that its only purpose was to poison the minds of the jury against the defendant.   If counsel for the State had stated in his argument to the jury that the defendant had been convicted or even tried for larceny before 'Squire Brown, beyond dispute this would have been such improper conduct as would authorize the reversal of the judgment.   Is there any difference, so far as the purposes to be obtained are concerned, in that statement in argument, and the one upon introducing a witness—"Turn to the case of State v. Rose, for larceny?"   They both equally convey to the minds of the jury that the defendant has been convicted of larceny.

This statement, in our opinion, was very damaging to the defendant, and had nothing whatever to do with the case on trial, and was simply calculated to inflame the prejudices of the jury, and to interfere with a calm, dispassionate consideration of the case made out by the testimony.

The statement indicating that the defendant had

previously been convicted of larceny would have a strong tendency to influence the minds of the jury in fixing punishment. He had the right to have his punishment assessed without bias or prejudice, in accordance with the nature of the case, as disclosed by the evidence.

The statements made by counsel for the State, in connection with the introduction of Justice Brown, were calculated to endanger a fair and impartial trial, and a new trial should have been awarded the defendant on that ground.

It will not cure this error to say that counsel had the right to make the offer of this testimony, and that the court excluded it. In State v. Prendible, 165 Mo. 329, the motion for new trial alleged, among others, two grounds, as follows:

"Fourth. Because the court erred in permitting the circuit attorney, representing the State, to persistently interrogate witnesses as to matters impertinent, immaterial and grossly incompetent, to the great prejudice of the defendant and in direct violation of law, over the timely objection of defendant.

"Fifth. Because the circuit attorney was guilty of gross misconduct in the examination and cross-examination of witnesses, in side remarks in the hearing of the jury, to the prejudice of the defendant."

This court reversed that case, and among the reasons for reversal, the grounds above quoted were included. The errors in that case consisted in a persistent improper examination and cross-examination of witnesses. The testimony was excluded, but the court held it was calculated to prejudice the rights of the defendant, and that did not cure the error. BURGESS, J., in the case of State v. Fischer, 124 Mo. l. c. 464, said, in respect to abusive language applied to a defendant:

"The language used was a mere personal abuse, having nothing whatever to do with the case or the facts and circumstances in proof. It should not have been tolerated and was only calculated to inflame the passions

of the jury against the defendant, who was entitled to a fair and impartial trial without having heaped upon his head personal abuse in the presence of the court and the jury.''

To the same effect, MACFARLANE, J., said in the case of State v. Warford, 106 Mo. 55:

''A defendant should be tried and convicted upon the evidence. Prosecuting officers should avoid remarks or arguments which are calculated to improperly influence juries to go outside the evidence and instructions to determine the grade of the offense for which a conviction should be had.''

See, also, cases of State v. Furgerson, 152 Mo. 92; State v. Moxley, 102 Mo. 374; State v. Ulrich, 110 Mo. 365.

The prosecuting attorney represents the entire people, including the defendant, and while it is commendable to industriously secure and present all the evidence which tends to show the guilt of the party on trial, it certainly will not be contended that it is fair, on the part of the State, in a criminal prosecution, to parade an incompetent witness before the jury, and make statements in the presence of the jury, for the sole purpose of arousing their prejudice against the defendant.

So far as the facts surrounding this particular case, disclosed by the record, are concerned, there was no evidence calculated to inflame the passions of the jury against the defendant, and cause them to unduly punish him; but it was the reverse, for much of the testimony was calculated to appeal to their leniency.

While we commend the zeal and earnestness of the prosecuting officer, in his effort to preserve and maintain the dignity of the State, we can not sanction this conviction, where the punishment assessed under the evidence in this cause at least tends to indicate that the prejudices of the jury were so aroused against the defendant as to interfere with a calm and dispassionate

consideration of the evidence alone pertinent to the issues before them.

This judgment will be reversed and the cause remanded. *Gantt, P. J.,* concurs; *Burgess, J.,* absent.