STATE v. ELLIS MILLER, Appellant.—No. 40095.—208 S. W. (2d) 194.

Division Two, February 9, 1948.

354

*Eugene M. Munger* and *Charles L. Moore* for appellant.

*J. E. Taylor,* Attorney General, and *C. B. Burns, Jr.,* Assistant Attorney General, for respondent.

[196] ELLISON, J.—The appellant was convicted in the circuit court of Scott County, on change of venue from Cape Girardeau County, in May, 1946, of burglary in the second degree and larceny

of 185 cases of whiskey from a warehouse in violation of Sec. 4448,[1] and his punishment was assessed by the jury at seven years imprisonment in the peniteniary for the burglary, under Sec. 4445, and three years for the larceny, under Sec. 4448. Under Sec. 4151 his appeal should have been perfected in December, 1946, and the cause was actually set for hearing in this court at the September Session, 1947. But owing to defects in the bill of exceptions it was continued on his motion to the present January Session, 1948.

He has filed no brief. Under Sec. 4150 it is our duty to examine for error the record proper, and also the bill of exceptions insofar as errors thereon were properly assigned under Sec. 4125 in appellant's motion for new trial below. The 23 assignments therein severally complain of: (1) the trial court's refusal to require special counsel for the State to disclose whom he represented as attorney; (2) errors in the admission and exclusion of testimony, including physical exhibits; (3) and errors in the giving and refusal of instructions.

The State's evidence consisted of the direct testimony of one witness, Herbert Blake, and of considerable circumstantial evidence. The undisputed facts are that the whiskey, of the value of $8340.16, was stolen from the main warehouse of the Moon Distributing Company in Cape Girardeau, which was equipped with burglar alarms, on the night of December 28, 1945. Entrance was effected by prying open the door of an annexed warehouse not so protected, and cutting a hole through the partition wall between the two rooms. Tile and mortar debris was found on the floor underneath the hole, together with a pocket knife. Of the stolen whiskey, 173½ cases were recovered by the sheriff a few days later in the vicinity of an untenanted farm belonging to Clyde Bohne near Hillsboro [197] some 30 miles south of St. Louis and 100 miles or more north of Cape Girardeau.

Bohne, the farm owner, was proprietor of a gasoline filling station in St. Louis. The State's witness Blake worked there. The truck in which the whiskey was found belonged to William J. Castle, who lived near the filling station. The appellant Miller lived across the street from it. Blake was charged as accomplice in the burglary and larceny by separate information, and had pleaded guilty to the charge but his punishment had not been assessed when he testified.

His testimony was that several months before the burglary the appellant suggested perpetrating it; said he had looked the place over; and that the job could be done despite the burglar alarms. He invited the witness Blake to join him in the project for a third interest, appellant to furnish a third man and a truck. Blake accepted, and appellant got the other man, Bert Wells. They started from St. Louis on the night of December 28, 1945, in the truck, Wells driving ap-

---

[1]Unless otherwise indicated, references to our statutes are to R. S. Mo. 1939, the same section numbers in Mo., R. S. A.

pellant's automobile, which contained burglar's tools. The burglary was effected as above described, the whiskey transported in the truck to Bohne's farm and stored early the following morning in a room of the vacant dwelling house thereon, and covered with a carpet or rugs.

Diverging a minute from the testimony of the accomplice Blake. A neighbor named Hughes had been looking after the farm for Bohne. He and his wife discovered that men were going to the house, and that something was stored there. Within a few days Hughes' automobile was stolen. He complained to the sheriff, who went to the farm, and found Castle's automobile truck loaded with the whiskey stalled on a side road nearby, and a tow truck from St. Louis was attempting to pull it out. Other evidence showed the appellant and his accomplices in the meantime had become alarmed, and were attempting to move the whiskey out, though none of them were with the truck when the sheriff captured it. However, the sheriff went back to the Bohne farm, met the appellant driving out in his automobile, and arrested him. The State Highway Patrol was notified and an investigation followed immediately.

That evening St. Louis police arrested Blake and Bohne. They and appellant Miller were taken to the headquarters of the State Highway Patrol at Kirkwood. Witness Blake said two of the troopers took him to a coal bin in the basement and "gave me to understand that if I didn't tell them about it they would hit me, beat me." One of the troopers, "told me I had thirty seconds to start telling what I knew about it." Blake said he told them he would not sign any papers without seeing an attorney, but he did tell them about the burglary and larceny. He believed the troopers would beat him if he did not tell them, but his main thought was that someone had told them the facts; that the troopers would get the information anyway; and that he would better get it over with. He insisted his story was true, and said when he entered his plea of guilty the trial judge urged him to get an attorney, but that he declined to do so.

This testimony of Blake was corroborated by the following evidence. The other accomplice, Bert Wells, testified he and the appellant Miller did burglarize the Moon Distributing Company on the night in question. This was on rebuttal, and he did not mention or include Blake as one of the burglars. Bohne, the owner of the farm where the whiskey was stored, said the appellant Miller told him it was stolen whiskey. Also, at Miller's request Bohne went from St. Louis to his farm near Hillsboro and told the neighbor Hughes, who had been looking after the place, that from then on Miller was going to take care of it. This was because Miller knew Hughes had been on the farm after the whiskey was stored there, and was afraid he "might cause some trouble."

Allen Grimes, warehouse foreman for the Moon Distributing Company, and James F. Beal, an employee, testified the appellant Miller

came to the Company's office in the summer or fall of 1945, preceding the burglary, and applied for a job. Both said he entered the warehouse where the whiskey was stored. This testimony was introduced as corroborative of accomplice [198] Blake's testimony that appellant told him he had looked over the warehouse. Appellant admitted he had applied for a job at the Company's office probably about August 1, 1945, but denied talking to the two employees above mentioned and that he went beyond the Company's office into the warehouse where he could see the cases of whiskey in storage.

William J. Castle, in whose truck the stolen whiskey was found, testified he had let appellant Miller have a key to the truck several days before the burglary, and that it was standing in front of his (Castle's) home during those days, accessible to the appellant. When appellant was arrested in his automobile it was searched, as well as the truck. Some of the arresting officers testified they found in the automobile some clothes, a cold chisel, some machinists' tools and a pair of shoes. Scrapings off the soles of the shoes, and some of the debris found under the hole in the wall of the warehouse, were preserved as exhibits and these items were turned over to the trooper Edmond Hockaday, chemist for the State Highway Patrol. He testified that a microscopic, spectographic and chemical examination of the exhibits showed that the scrapings from the shoes and particles adhering to the chisel were similar to the title and mortar debris found under the hole in the warehouse wall, and expressed the expert opinion that all came from the same source and were identical. Particles brushed from one of the coats found in appellant's autobile and submitted to Hockaday likewise were found to be the same as the debris. Appellant objected to the qualifications of trooper Hockaday as an expert witness. That question will be considered later.

So much for the State's evidence. The appellant's defense was an alibi. He testified that he bought the whiskey from Blake about 5:30 in the morning after the burglary, at the intersection of State Highway 21 and Lindbergh Road in St. Louis County, after having made a deal in St. Louis early that evening with Blake and a man named "Gene" to purchase it, and to meet them at the point above mentioned. He drove out there in his automobile and waited until the vendors came with the whiskey in Castle's truck. Thence they drove down to Bohne's farm a distance of some 20 miles. Appellant testified he had $5000 in currency with him, and paid it to "Gene", and the whiskey was stored in the vacant house on the farm and covered with some old rugs, as heretofore mentioned. Bert Wells had gone with him, and was left there to guard it.

As to his prior whereabouts that night appellant testified he had loafed at a street corner until 9 o'clock, and then went to Bill Jones' tavern until almost closing time, midnight or 1 A. M. Then he went

to his room, which he occupied with Bert Wells. An hour or so later they started out to the county on the trip to purchase the whiskey. He explained that he had so many clothes (including the shoes) in his car when he was arrested because he was going to change his rooming house. He admitted he told Mrs. Hughes (neighbor to the Bohne farm near Hillsboro): "If you will not call the law I will give you my automobile," and said he did it because he had the whiskey stored on the farm and had no license. He also admitted borrowing Castle's truck on a Tuesday about the middle of December, but said it was to move his uncle from one address to another.

As already stated Bert Wells, another of the burglars, contradicted appellant on this alibi. But a witness named Marvin Martin testified Miller was in Bill Jones' tavern from about 9 p. m. to 1:15 a. m. that night. Appellant's father testified that appellant did have $5000 in ready cash at the times here involved. Several witnesses testified he was a good worker, generally engagd in mechanical lines, and some six witnesses said his general reputation for honesty was good in St. Louis and in southeast Missouri where he lived until three years prior to his coming to St. Louis. This review substantially covers the essential evidence, but further facts will be mentioned as we go along.

The first assignment of error in appellant's motion for new trial was that the trial court erred in refusing to compel Judge Finch, special counsel for the State, to disclose whom he represented in the case, in order that appellant's counsel might [199] properly interrogate the members of the jury panel. The bill of exceptions shows that before appellant's counsel began the voir dire examination of the jury panel, they made a request for the foregoing information; the question propounded being who had employed Judge Finch as special counsel, and who had interested him in the case. It does not appear whether this request was made in the presence of the members of the panel, but at any rate it was denied.

From the beginning the West Decennial Digests and Missouri Digest have carried under the subject "Criminal Law" a section 630 entitled "Disclosure of names of private prosecutors." No Missouri case has ever been cited thereunder. Under the corresponding Sec. 954 in 23 C. J. S., p. 261, and Sec. 2035 in 16 C. J., p. 801, it is stated that: "In the absence of statute, the state cannot be compelled to disclose the names of private prosecutors or informers, especially where it is not shown that defendant will be prejudiced by the want of such information." Furthermore, for years our statutes, now Sec's 3894, 3933 and 4229 have required the names of the State's witnesses to be indorsed on indictments and informations, and they were so indorsed in this instance, including the name of the person who filed the preliminary complaint in justice court under Sec. 3857. In addition to that the information alleged that Louise V. Himmelberger owned the building which had been burglarized; and that the

Moon Distributing Company, a corporation, was the tenant and the owner of the stolen whiskey.

It is held that a liberal latitude is allowed in the examination of jurors on the *voir dire* for the purpose of challenge for cause, though the trial court is vested with a large discretion in the scope of such examinations. State v. McKeever, 339 Mo. 1066, 1078(5), 101 S. W. (2d) 22, 27(6). In view of the fact that the record in this cause apparently disclosed the names of all the witnesses and interested parties, we are unable to see that appellant's rights in examining the panel were prejudiced by the trial court's refusal to compel Judge Finch to state who had employed him. If there were any special circumstances requiring a further disclosure, appellant's counsel should have stated them. See State v. Carden, 209 N. C. 404, 411(3), 183 S. E. 898, 903(5), certiorari denied 298 U. S. 682, 80 L. Ed. 1402, 56 S. Ct. 960. We do not regard this criminal case as being on a par with tort cases where the defendant's liability is covered by liability insurance (a private contract), in which event it is sometimes held the defendant may be required to disclose the name of the insurer to the plaintiff's counsel out of the presence of the jury, to assist them in challenging the jury. See Buehler v. Festus Mercantile Co., 343 Mo. 139, 155 (6), 119 S. W. (2d) 961, 968(8). We rule this assignment against the appellant.

[2] The second assignment in the motion for new trial charged error in the admission of the testimony of the State's expert witness Edmond Hockaday, chemist for the State Highway Patrol, with respect to the tile and mortar debris and the scrapings from appellant's shoes, on the grounds: (1) that he was not shown to be qualified as an expert; and (2) because the knowledge of the witness as to the identity of the exhibits was derived from other persons. Assignment 12 in the motion was substantially the same, but had reference to other exhibits, namely, the shoes, coat and cold chisel found in appellant's automobile when he was arrested. It will be remembered the witness testified as an expert that particles of matter found in the scrapings from the shoes, and on the coat and chisel were all the same as the debris.

This second point, about the identity of the personal articles examined, is wholly without merit. The appellant did not deny he owned them. In fact he explained the presence of his clothing and shoes in his automobile. Also he conceded the chisel was in the tool box in the car, and that the knife found in the debris was his. Furthermore these articles and the debris were traced by the testimony of the officers who found them to the chemist.

Regarding the qualifications of the chemist as an expert witness. He testified he had been a member of the Highway Patrol for nine years, and for the last 4½ years in charge of its laboratory. He had [200] received a degree in science, particularly chemistry,

from Westminster College at Fulton, and had had a large experience in making tests on articles as evidence during the period of his service as chemist for the Patrol. He was familiar with the use of a microscope and spectograph, and with various kinds of chemical analyses. He estimated he had made tests of the same kind as those challenged ten times before. In our opinion this was enough to qualify him as an expert under such cases as State v. Foster, 355 Mo. 577, 597(18), 197 S. W. (2d) 313, 325(24).

The third assignment in the motion complained of the admission of incompetent and irrelevant testimony concerning the purchase of the automobile truck owned by William J. Castle and used in the larceny, and concerning an alleged conversation between the appellant and the witness Gordon Mariott. Castle testified he wanted to buy an automobile truck, but they were scarce in St. Louis where he lived. The appellant referred him to a dealer, Gordon Mariott, in Chaffee, some 100 miles or more below St. Louis, and in his car took Castle to Jackson, about 15 miles from Chaffee. At the latter town on December 4, 1945, Castle bought and paid Mariott for the truck here involved. He took it to St. Louis where he kept it parked in the street in front of his house. Castle further said he later loaned the truck to appellant to move his uncle from one address to another, and let him have a key to it. Appellant testified this was on a Monday about the middle of December (the middle Monday of December, 1945 was December 17).

The accomplice Blake testified that he, appellant and Bert Wells started out from St. Louis in the truck on a Sunday night, about December 15, to burglarize the place appellant had in mind, but the truck was not working right, so they postponed the trip until December 28 when the crime was perpetrated. The truck dealer at Chaffee, Gordon Mariott, testified that in the fall of 1945 the appellant talked to him about renting (not buying) a truck for one night for $200, and said "You won't get into trouble over it. If the truck is not back the next morning report it stolen." Later appellant came back to Mariott's garage and looked over a truck Mariott had there, which was the one later sold to Castle.

It is the foregoing testimony of Castle and Mariott which is assailed in the third assignment in the motion for new trial on the ground that it is incompetent because irrelevant, in that it did not tend to prove any material fact of appellant's guilt. In view of the fact that much of the evidence in this case was circumstantial, and strongly tended to corroborate the direct testimony of the accomplice Blake, we think this assignment is not well taken. Appellant's alibi was weak. At best his explanation indicated he knew he was buying contraband whiskey, and the testimony of the two witnesses tends to show he was making preparations to transport it. We hold no error was committed in the admission of the testimony.

■ Assignment 4 in the motion for new trial challenged as irrelevant the testimony of L. B. Smith, Highway Patrolman, that he had made plaster paris casts (which were exhibited) of the treads on the tires of Castle's truck in which the stolen whiskey was found—for the evident purpose of comparing them with tire tracks near the warehouse where the whiskey was stolen. But there was no testimony that such comparison was or could have been made. Assignment 8 contended the testimony of Mr. and Mrs. Hughes (neighbors to the Bohne farm where the whiskey was found) likewise was irrelevant. Assignments 10 and 11 similarly attacked the testimony of witnesses Henry Buff and Elmer Mecker. But appellant failed to object to the introduction of any of this testimony and evidence at the trial (except in one instance where the objection was sustained) and did not move to strike it out. His first complaint appeared in his motion for new trial. In these circumstances the assignments cannot be considered. But we will add that we think the testimony of Mr. and Mrs. Hughes was clearly competent.

■ Assignments 5 and 6 in the motion complained of the admission as exhibits of "several" cartons of the stolen whiskey—from part of which the serial numbers or shipping address had been scratched out. The motion asserts the exhibition of all of [201] these cartons of whiskey tended to prejudice the jury, and that those from which the foregoing inscriptions had been removed could not be properly identified. We think there is no merit in the contention. Appellant, himself, did not dispute the identity of the whiskey, but merely contended he purchased it instead of stealing it. It was all found in Castle's truck, intermingled with cartons which could be and were positively identified.

■ Assignment 7 predicated error on the admission of the testimony of James F. Beal on the ground that it was too remote and had no probative value whatever. He was one of the witnesses who said appellant had come to the Moon Distributing Company's office the fall before the burglary and applied for a job; and that he did go into the warehouse where the whiskey was stored. Clearly the evidence was competent. It corroborated the testimony of the accomplice Blake that appellant said he had looked over the warehouse; and impeached appellant, who admitted he had gone there but denied that he entered the warehouse where the whiskey was.

■ The 9th and 23rd assignments in the motion contended it was error to admit the testimony of accomplice Blake, who had been charged with the same crimes in a separate information and had already pleaded guilty without any promise of immunity or leniency. He had first confessed to the Highway Patrol troopers at the Kirkwood Headquarters, under what he considered to be threats of a "beating", but said he did so voluntarily, as heretofore narrated. And when he entered his plea the circuit judge cautioned him he was entitled to

counsel. There can be no question, under the foregoing facts that Blake was a competent witness. Sec. 4080; State v. White (Mo. Div. 2), 126 S. W. (2d) 234, 235(2); State v. Morefield, 342 Mo. 1059, 1065(5), 119 S. W. (2d) 315, 317(5,6); State v. Schyhart (Mo. Div. 2), 199 S. W. 205, 210(7).

But appellant here contends first that the testimony of witness Blake was incompetent because it was coerced by threats of physical violence made by the troopers. This is directly contrary to the testimony of the witness that he made the confession truthfully and voluntarily notwithstanding the threats; and that when he entered his plea of guilty Judge McDowell advised him of his rights and advised him to accept counsel. Further appellant attempts to invoke the due process clauses of the State and Federal Constitutions in behalf of witness Blake, who did *not* invoke them. But it is elementary that he cannot do that. To raise a constitutional question his personal rights must be directly affected. State ex rel. Crandall v. McIntosh, 205 Mo. 589, 605, 103 S. W. 1078, 1082; State v. Kramer (Mo. Div. 2), 222 S. W. 822, 824(5); Ex parte Lockhart, 350 Mo. 1220, 1233(9), 171 S. W. (2d) 660, 666 (18).

Assignments 13 and 14 in the motion for new trial charged error in the trial court's refusal to give appellant's peremptory instructions No's 1 and 2, which respectively directed the jury to find the defendant not guilty at the close of the State's case in chief, and at the close of the whole case. From what has been stated it is clear the State made a case for the jury, and that the court's refusal to give the instructions was not error.

The next five assignments (15 to 19) in the motion, respectively, complained of error in the refusal of five several instructions tendered by appellant, the only ground stated in each being the same, viz., "for the reason that said instruction is proper and declares the law as applicable to said cause." The instructions, No's 3, 4, 14, 15 and 16, severally dealt with the subjects of reasonable doubt, circumstantial evidence, alibi and testimony of an accomplice. We hold the quoted reason given in these assignments was too general to comply with Sec. 4125, which provides that a motion for new trial in a criminal case "must set forth in detail and with particularity . . . the specific grounds or causes therefor." It has been held in several decisions that assignments like those here are insufficient. Sec. 4125, Mo., R. S. A., Note 30, p. 789; State v. Londe, 345 Mo. 185, 194(5), 132 S. W. (2d) 501, 506(12); [202] State v. Reagan (Mo. Div. 2), 108 S. W. (2d) 391, 395(5, 6); State v. Ward, 337 Mo. 425, 434(7), 85 S. W. (2d) 1, 6(8).

Assignment 20 in the motion complained that the State's instruction No. 6 on grand larceny was erroneous in that it was "duplicitous and does not properly instruct the jury as to the law; that said instruction cannot be understood by a jury." At least part, and per-

haps all, of this assignment is too indefinite for the reasons stated in the last paragraph. But without going into those questions it is enough to say the instruction here is substantially in a form approved in State v. Tipton, 307 Mo. 500, 513-4(5), 271 S. W. 55, 59(4), with the exception that it requires appellant's stealing of the whiskey to be *felonious,* with the intent to convert the same to his own use, whereas the instruction in the Tipton case only required the taking to be *wrongful,* with the intent *fraudulently* to convert the property to his own use. That decision nevertheless held the instruction was sufficient, though conceding it would have been better to use the word feloniously, and we hold the same here. For an instruction that was held erroneous because of the omission of necessary averments, see State v. Price, 348 Mo. 361, 362(1), 153 S. W. (2d) 353, 354(3).

 Assignment 21 in the motion for new trial assailed instruction No. 8 on alibi. We shall not set it out since it is exactly the same as one appearing and approved in State v. Grant (Mo. Div. 2), 98 S. W. (2d) 761, 762(3, 4), except that in the latter half of the second paragraph of the instruction here the words "if any" (referring to the alleged crime) are twice omitted, and at the end of the instruction the clause "if you so find it was committed" is left out.

Some of the grounds in appellant's assignment are in the same indefinite terms condemned in preceding paragraphs of this opinion. The specific grounds assigned are that: (1) the instruction assumes the offense charged was in fact committed; (2) it attempts to instruct the jury "as to its right to take into consideration in arriving at their verdict a doubt of the presence of the defendant at the time and place mentioned in said information"; (3) it is confusing in that it attempts to cover three separate subject matters, to wit: "the law as to the defense of alibi; reasonable doubt of the guilt of the defendant; and the definition of reasonable doubt."

With respect to the first criticism—that the instruction here assumes the crime was committed—it is true the instruction thrice omits the cautionary phrases and clause appearing in the instruction in the Grant case, requiring the jury to find the crime was committed. But the clause does appear once in the first paragraph of the instant instruction and once in the first part of the second paragraph, just as in the Grant case. This, we think, was enough to warn the jury they must find the crime had been committed before they could consider the question of alibi. As to the second criticism, it is further true that the instruction did give the jury the right to consider whether they had a reasonable doubt that the appellant was present at the time and place of the commission of the crime. But there was no error in that. The appellant had tendered the issue and the instruction did not cast the burden of proof on him. For it told the jury in effect that in order to convict the appellant they must find beyond a reasonable doubt he was present when the crime was

committed, since it said if they did have a reasonable doubt on that issue they must acquit him. See State v. Marshall, 354 Mo. 312, 320(12), 189 S. W. (2d) 301, 306(13); State v. Hubbard, 351 Mo. 143, 150-6(4), 171 S. W. (2d) 701, 706(11-15). Appellant's third criticism, that the instruction was confusing and intermingled three separate issues was in effect covered and disallowed in the Grant case.

█ Assignment 22 in the motion for new trial charged error in instruction No. 9 on the testimony of accomplices. The specific part of the assignment complains that the instruction authorized the jury to accept such testimony if satisfactory to them, whereas the law requires the jury to believe from the testimony of the "witness on behalf of the State" that the defendant is guilty of the crime charged to a moral [203] certainty and beyond a reasonable doubt. In the assignment the word "witness" as just quoted appears in the singular number and may refer to the accomplice alone, or may be a misprint for the plural. At any rate, what the instruction did say was that the testimony of accomplices is admissible, but unless corroborated on material facts by some other witness or witnesses not implicated in the crime, the accomplice's testimony should be received and considered by the jury with great caution. Then it went on to say "if you are fully satisfied that the testimony of an accomplice is true, and that the facts and circumstances testified to by him are sufficient to establish the guilt of the defendant of the crime as charged *under the instructions of the court* (italics ours) then you are at liberty to find the defendant guilty upon such testimony alone." And there were other instructions which required the jury to find the appellant guilty beyond a reasonable doubt on the evidence as a whole.

We find no fault with the instruction. It does not say the jury may convict if they are merely satisfied with the accomplice's testimony; nor that they must be willing to convict on his testimony alone. But they may do so if convinced beyond a reasonable doubt. The instruction is sustained by such decisions as State v. Bobbitt, 215 Mo. 10, 41(8), 114 S. W. 511, 520(11); State v. Cummins, 279 Mo. 192, 209(4), 213 S. W. 969; State v. Pope, 338 Mo. 919, 926(6), 92 S. W. 904, 909(13); State v. Schnelt, 341 Mo. 241, 251(7), 108 S. W. (2d) 377, 383 (10, 11).

The foregoing disposes of all the assignments in the motion for new trial, and we find no error in the record proper. The information, drawn under Sections 4440 and 4448, is in due form and charges both the burglary and the larceny in one count. The appellant waived formal arraignment and pleaded not guilty. The verdict is responsive to the information, finding him guilty of the two crimes severally and assessing the punishments separately within the limits set by Sections 4445 and 4448. He was duly granted allocution under Sec. 4102. But apparently his motion for new trial was heard and

overruled on that same day before sentence and judgment were pronounced, in which event allocution was unnecessary, under Sec. 4103.

Finding no error in the whole record the judgment and sentence are affirmed. All concur.