STATE of Missouri, Respondent,

v.

Woodrow A. BAKER, Appellant.

No. 45665.

Supreme Court of Missouri.

Division No. 1.

Oct. 8, 1956.

Harry C. Blanton, Sikeston, Blanton & Blanton, Sikeston, of counsel, for appellant.

John M. Dalton, Atty. Gen., George E. Schaaf, Asst. Atty. Gen., for respondent.

HYDE, Judge.

Defendant was found guilty by a jury and sentenced to two years imprisonment in

the penitentiary for taking indecent improper liberties with a female minor of the age of 7 years "by then and there putting his hands upon and about her person and the private parts of her body" in violation of Section 563.160. (Statutory references are to RSMo and V.A.M.S.) Defendant has appealed from this judgment of conviction and sentence.

It is not contended that the State failed to make a case for the jury on this charge so it is sufficient to say that the prosecuting witness testified to the acts charged and that it was conceded she was competent to testify as a witness. Defendant denied that he touched her "in any way, shape or form", although he was alone with her for some time, in the apartment where she lived with her parents, after her young companion (baby sitter) left and before her father arrived. Defendant worked for Periodical Publishers and made a collection the day before from her father at the apartment (for magazines) and said her father had invited him to come back the next evening when he returned from work (as a city policeman) which he expected to be about 4:30 P.M.. However, her father was delayed and did not reach the apartment until after 5:00 P.M.; defendant stayed and talked to him until after 6:00 P.M., discussing the grand jury then in session. The prosecuting witness did not tell her mother about the occurrence until about 8:00 P.M. when she was going to bed. Her parents went at once to the Prosecuting Attorney and defendant was arrested and taken to jail that night.

Defendant contends that he did not have a fair and impartial trial because of several incidents occurring during the trial which he says required the discharge of the jury. We will consider these in the order of their occurrence at the trial. The first was during the cross-examination of the father of the prosecuting witness, who testified as a witness for the State. After it had been brought out that the little girl had been sent to a store for cigarettes while defendant and her father were talking, the following occurred:

"Q. And I will ask you if during her absence if you didn't ask the defendant Baker if he didn't want to go for a ride with you in the country?

"Mr. Gilmore: I will object to that, Your Honor.

"The Witness: I would like to answer that.

"The Court: Overruled; he may answer.

"The Witness: I did not, and if he says I did he's a lying son-of-a-bitch, if he said I did. I may be out of order and I'm sorry, Judge.

"The Court: Be quiet, Mr. Witness—

"Q. (By Mr. Blanton) And I will ask you—

"The Court: Wait a minute—

"The Witness: I'm sorry.

"The Court: (addressing the witness) The Court can appreciate your position, but—

"The Witness: Damn right—(At this point the witness began crying and left the witness chair.)

"Mr. Dempster: We would like to move for a recess a moment, Your Honor.

"The Court: Gentlemen of the jury, go in the jury room."

During the recess and in the absence of the jury, defendant's counsel moved that the jury be discharged "in view of this outburst from the witness stand." The Court denied the motion but reprimanded the witness, fined him $15 for contempt of court and warned him that "any further recurrence of this will be dealt with immediately and severely." The jury was then brought in and the Court made the following statement: "The Court: Gentlemen of the jury, you are instructed to disregard statements made by (the witness), now

on the stand, which he implied a certain term of the defendant if the defendant said that he said certain things. You are also instructed to disregard the action and demeanor of the witness immediately following that, which occurred immediately before recess. That language is stricken out of the record. You are instructed to disregard the witness' conduct, that is not a part of the evidence in this case, it should have no part in your deliberation in any way, and you are to disregard that and to give it no consideration when the case is finally submitted to you. You will decide it upon the evidence as you hear and believe it from the witness stand, and under the instructions from the Court, as though this conduct had never occurred."

(Defendant later testified that the father of the prosecuting witness had said to him: "Would you like to take a ride"; to which he responded, "Where to?" and he said, "Out in the country" and defendant then said "What for?" and he said, "We can have a little party" to which defendant responded, "You can get indicted for something like that". Defendant said he was kidding, but that the response was "I'm not going to be indicted, and if anybody gets indicted it will be you. When I wear this uniform I'm as big as anybody in town, and don't you forget it.")

■ Defendant says a demonstration such as this is calculated to arouse sympathy or passion and prejudice and should not be permitted, citing State v. Connor, Mo.Sup., 252 S.W. 713; and that in a case of this nature the charge is so abhorrent that conviction is easy and that the utmost impartiality and fairness on the part of the prosecutor and the Court during the trial is required, citing State v. Seay, 282 Mo. 672, 222 S.W. 427; State v. Pierson, 331 Mo. 636, 56 S.W.2d 120, 124; State v. Klink, 363 Mo. 907, 254 S.W.2d 650, loc. cit. 657. We agree with these statements but do not think this incident necessarily required the discharge of the jury; and that was the only action requested.

In this case, the Court did not permit the demonstration by the witness of his feelings to continue, as in the Connor case. On the contrary, before defendant's counsel made any objection or request, the Court sent the jury out of the courtroom and in their absence took vigorous action against the witness before resuming the trial, and after which there was no complaint as to his conduct. The Court also clearly and emphatically admonished the jury to disregard this incident and conduct. Declaring a mistrial for misconduct of a witness or spectator lies largely within the discretion of the trial judge. State v. Topalovacki, Mo.Sup., 213 S.W. 104, 105; State v. Sinovich, 329 Mo. 909, 46 S.W.2d 877, 881; State v. Bolle, Mo.Sup., 201 S.W.2d 158, 160; State v. Cooley, Mo.Sup., 221 S.W.2d 480, 486; see also State v. Swindell, Mo.Sup., 271 S.W.2d 533, 536; State v. Johnson, Mo.Sup., 286 S.W.2d 787, 795. We cannot say there was any abuse of discretion in regard to this matter or that the action taken was insufficient.

■ The second incident was during the testimony of the Deputy Sheriff (a witness for the State) who went with the Sheriff to arrest defendant. The witness said he was at the front door of defendant's home and saw defendant with his wife and small child inside. The following then occurred:

"Q. (By Mr. Dempster) Did you hear any conversation between Baker's wife and Baker? A. Yes, sir, I did.

"Q. In Baker's presence? A. Yes, sir.

"Q. Tell us what the conversation was. A. The conversation, she said to him, 'This little girl wouldn't accuse you of this if there wasn't something to it.'

"Q. Now, was there anything else said?

"Mr. Blanton: We asked that be stricken as not being binding on the defendant, and highly prejudicial.

"The Court: I don't know, until we get the conversation. It's overruled at this

time in view of this question, he's asking now what Mr. Baker said, if anything.

"Q. (By Mr. Dempster) Did Mr. Baker say anything? A. No, sir.

"Q. Did the defendant then come out of the house later? A. Yes, sir, just a few minutes.

"The Court: Now, wait just a minute. Mr. Witness, was the defendant Baker, do you know whether he was under arrest at that time or not?

"The Witness: I suppose the Sheriff had placed him under arrest—

"The Court: Never mind what you suppose, do you know whether he was or wasn't?

"The Witness: Yes, sir, he was.

"Mr. Blanton: Now, we ask that it be stricken.

"The Court: The motion is sustained, the evidence as to what the defendant's wife said is stricken from the record, and the jury is instructed to disregard it, because one accused is not required or obliged to make any answers when they are under arrest.

"Mr. Blanton: And we further ask that because of the impropriety on the part of the employee of the prosecutor that the jury be discharged.

"The Court: Motion denied."

It is now contended that this testimony was hearsay and that it was also inadmissible because statements of wife to husband are confidential and a wife is incompetent to testify against her husband. No such objection was made at the trial nor were these grounds stated in the motion for new trial; and, in fact, no objection was made at all although the first three questions, set out above, clearly indicated that the conversation between defendant and his wife was being offered in evidence. In fact, no request of any kind was made to the Court until after the conversation had

been stated in answer to the third question and a fourth question had been asked about it. See State v. Di Stefano, Mo.Sup., 152 S.W.2d 20, 22; State v. Tyson, 363 Mo. 1242, 258 S.W.2d 651, 655; State v. Burns, Mo.Sup., 280 S.W.2d 119, 122. Thereafter, the Court did strike out the testimony about this conversation upon another ground, also now raised in defendant's brief but which was first raised by the Court itself at the trial. Thus, although no objection was made to these questions, the Court did take the action thereafter requested (that this evidence be stricken) and clearly instructed the jury to disregard this testimony. Furthermore, we have held that a defendant in a criminal case may waive the protection of the statute, Section 546.260, providing that husband and wife cannot be required to testify against each other, by failure to object. State v. Hill, Mo.Sup., 76 S.W.2d 1092, 1094. As to this matter also, under these circumstances, we cannot say there was any abuse of discretion in refusing (after this evidence was stricken) the further request that the jury be discharged.

■ The third incident also occurred during the examination of the Deputy Sheriff and was as follows: "Q. Now, while the Sheriff was gone, did you and the defendant have any further conversation? A. Yes, sir, we was in the car and he gave me some cards, some pictures to keep for him, said he didn't want to go to jail with them. (The following proceedings were had in the presence but out of the hearing of the jury.

"Mr. Dempster: Out of the presence of the jury, I want to show by this witness that the defendant here—or that the witness here was handed some cards which reflect a state of mind of which this defendant had relative to immorality, the cards depict an immoral condition existing between people, which this defendant—we want to show this defendant handed to this witness, stating that he didn't want these cards to be found on him while he

was in jail. Now the reason that we are making this offer to the Court out of the presence of the jury, we felt that the Court would probably want to see these cards and rule on their admissibility before the jury saw them, because if they are incompetent I don't think it would be proper to make the offer in the presence of the jury.

"Mr. Blanton: To which the defendant certainly objects for the reason he is not charged with carrying or possessing or exhibiting obscene cards, and it would be highly prejudicial.

"Mr. Dempster: The purpose of the exhibit is to show his immoral state of mind. He is charged with an immoral act, this all goes to his immorality.

"Mr. Blanton: He is charged with a specific act, and that alone is competent in this case.

"Mr. Dempster: We feel that this might be a declaration against interest also, by giving the cards to the Sheriff and stating that he didn't want to have them found on him.

"The Court: It's very close, gentlemen. Of course, it might be another specific crime.

"Mr. Dempster: Yes, it might be, but it's part of his state of mind, that is what we want to prove.

"Mr. Blanton: Doesn't make any difference what his state of mind was.

"Mr. Dempster: We want the Court to be certain about it, we will show the Court the cards if the Court wants to see them.

"The Court: Let me see the cards.

"Mr. Welborn: We asked the jury be taken out while the cards are passed to the Court, it would be prejudicial to the jury.

"The Court: No, go ahead. Who has the cards? (Said cards handed to Court by Mr. Gilmore.) Well, the objection will be sustained, gentlemen."

Defendant says: "By having the Deputy Sheriff testify in the presence of the jury that he received some picture cards from the Appellant which the Appellant told him he didn't want to go to jail with, could, and no doubt did, cause the jury to draw the worst possible inference against the Appellant." Defendant also says this was an insinuation that he was guilty of an unrelated offense and quotes from State v. Jones, 306 'Mo. 437, 268 S.W. 83, 86, 87, as follows: " 'The practice of seeking to obtain an advantage in a trial of a case by injecting therein unfair insinuations should have the severest condemnation and suffer the most disastrous result permissible under the law.' "

However, in the Jones case, insinuations of convictions of other crimes were said to have been sanctioned by the Court by failing to rebuke counsel when requested to do so. In this case there was no insinuation of a conviction of any crime, the question and answer did not describe the pictures or indicate what kind of pictures they were and all of the discussion about them was out of the hearing of the jury. The Court sustained defendant's objection and no further action was requested. Thus, there was no basis for any claim of an erroneous ruling. However, defendant says of these three incidents that they were the result of misconduct of the specially employed prosecutor and were so highly prejudicial that no withdrawal and direction to disregard could eradicate the poison and prejudice created thereby, citing such cases as State v. Rose, 178 Mo. 25, 76 S.W. 1003; State v. Matsinger, Mo.Sup., 180 S.W. 856, 858; State v. Benson, 346 Mo. 497, 142 S.W.2d 52, 54. In both the Benson case and the Matsinger case, it was attempted by an instruction to withdraw evidence admitted over the defendant's objection. In the Rose case, the Court sustained an objection to an improper statement by the Prosecuting Attorney but said nothing to destroy the injurious effects of the statement. In this case, there were no

objections to testimony in the first two incidents and in the third both the offer and objection was made out of the hearing of the jury and the objection was sustained. It should also be noted there was no motion to strike the testimony of the Deputy Sheriff about defendant giving him some pictures. As hereinabove indicated, action to be taken on such matters as these, is largely within the trial court's discretion and on this whole record we cannot say there was abuse of discretion or that defendant did not have a fair trial because of these incidents.

■■ Defendant also claims, as stated in his motion for new trial, "that the Court erred in polling the jury after it had been out about two hours and in asking them to hold up their hands if they thought there was a chance for them to get together, resulting in a compromise verdict." As to this the record shows: "(The jury retired for deliberation at 3:23 p. m., Tuesday, September 20, 1955, and at 5:26 p. m., Tuesday, September 20, 1955, the Court returned the jury to the courtroom, and the following proceedings were had, to-wit:)

"The Court: Gentlemen of the jury, you have been in your jury room for a little more than two hours. Have you arrived at a verdict?

"A Juror: No, sir.

"The Court: Do you think that you will be able to arrive at a verdict?

"A Juror: It don't look that way.

"The Court: Well, I want to ask you how you stand numerically, but not which way you stand.

"A Juror: Ten to two.

"The Court: You stand ten to two. How long have you stood at ten to two?

"A Juror: From the beginning.

"The Court: How many of you think that you will be able to arrive at a verdict? Do any of you think that you will be?

"A Juror: Within how long?

"The Court: There isn't any certain time; the jury is the judge of when they will arrive at a verdict. How many of you think that you will?

"A Juror: I would be afraid to say.

"The Court: It's just a matter of opinion.

"A Juror: We have hopes.

"The Court: It's a matter of opinion on how many think, we wouldn't let the witnesses testify what they think. How many of you think you might arrive at a verdict? (A showing of hands from the jury.)

"The Court: All right. Suppose you go back and try it again and see how you get along. Go back to the jury room." (The jury returned to the jury room at 5:29 p. m., Tuesday, September 20, 1955, and at 5:55 p. m., Tuesday, September 20, 1955, returned a verdict of guilty.)

We have no doubt that it is common practice in this State, when the jury has deliberated for a considerable time, for the Judge to inquire how they stand numerically, without indicating what party or result they favor, for the purpose of ascertaining whether there is a reasonable probability of an agreement. Authorities differ as to the propriety of such an inquiry but we think the real question is whether there was any coercion of the jury in connection with it. See Annotation on Coercion, 85 A.L.R. 1420, 1450; 53 Am.Jur. 673, Secs. 954–955; 23 C.J.S., Criminal Law, § 1380, p. 1058. Such an inquiry has been barred in the federal courts by the decision of the United States Supreme Court in Brasfield v. United States, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345, which held "that the inquiry itself should be regarded as ground for reversal", saying that "in general its tendency is coercive." However, our view is that such an inquiry is not coercive per se but that it must be determined from the record of what is said and done at the time whether or not there

is any indication of coercion. A case in point is State v. Alexander, 66 Mo. 148, 163, where there were private conversations between the Judge and some of the jurors in the absence of the prisoner and his counsel which, of course, was improper and was considered coercive in effect. In this case, there was no direction to the jury (as in some of the federal cases) about the desirability of reaching a verdict or urging them to do so. (For criticism of the Federal Rule see 8 Wigmore, 3rd Ed. 680, 681, n. 3; Orfield, Criminal Procedure From Arrest to Appeal 467; 41 Harv.Law Rev. 797; 27 Col.Law Rev. 756; 76 U. of Pa. Law Rev. 622; 23 Mich.Law Rev. 296.) Furthermore, in this case, there was no objection interposed to the inquiry at the time it was made or to anything said or done by the Court thereafter; and no other action by the Court was requested. See State v. Whitaker, Mo.Sup., 275 S.W.2d 316; See also Hoffman v. St. Louis Pub. Service Co., Mo.Sup., 255 S.W.2d 736. We hold there was nothing preserved for review herein concerning this matter.

■ Defendant also claims error in refusing to give Instruction 3–D requested by him, stating that the burden of proof was on the State. This offered instruction also contained directions concerning the presumption of innocence covered by other instructions and admonitions against acting on suspicion, guessing or compromise. The only reference to this in the motion for new trial was as follows: "That the Court erred in refusing to give Instructions numbered 1–D, 3–D, 4–D, 5–D, 6–D and 7–D for the reason that they properly declared the law governing the trial of this case to cure the error in the inadequacy of the instructions given by the Court in behalf of the State hereinabove set out." Thus there was nothing stated applicable only to Instruction 3–D to show why it was error to refuse it. Instead there was merely a general statement applicable to all refused instructions which is insufficient to preserve anything for review because it does not meet the requirements of particularity of 42 V.A.M.S. Supreme Court Rules, rule 27.20 or Section 547.030 which this rule superseded. Defendant did not state wherein any instruction given by the Court was deficient, State v. Foster, 355 Mo. 577, 197 S.W.2d 313, 318, 320, or what inadequacy is supplied but only the general statement that all of the refused instructions properly declared the law. See State v. Lawrence, Mo.Sup., 280 S.W.2d 842, 848. "Assertions to the effect a specified refused instruction properly declared the law * * * are too general." State v. Linders, Mo.Sup., 224 S.W.2d 386, 390. See also State v. Harmon, Mo.Sup., 243 S.W.2d 326, 332; State v. Miller, 357 Mo. 353, 208 S.W.2d 194, 201; State v. Gerberding, Mo.Sup., 272 S.W.2d 230, 235. Furthermore, we note that the jury was instructed concerning the presumption of innocence and that the defendant was entitled to an acquittal unless the evidence satisfied them of defendant's guilt beyond a reasonable doubt. They were also instructed "that if the whole evidence in this case leaves their minds in such condition that they are neither morally certain of the defendant's innocence nor morally certain of his guilt, then a reasonable doubt exists, and the jury must give the defendant the benefit of such doubt, and acquit him."

We find no reversible error in the incidents hereinabove discussed; and we find no error respecting the sufficiency of the information, verdict, judgment and sentence.

The judgment is affirmed.

All concur.